Frank C. Rothrock (SBN: 54452)
frothrock@shb.com
Natasha L. Mosley (SBN: 246352)
nmosley@shb.com
SHOOK, HARDY & BACON L.L.P.
5 Park Plaza, Suite 1600
Jamboree Center
Irvine, California 92614
Telephone: (949) 475-1500
Facsimile: (949) 475-0016

Ross A. Dannenberg, Esq. (*pro hac vice* application pending)
rdannenberg@Bannerwitcoff.com
BANNER & WITCOFF, LTD.
1100 13th Street, NW, Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000
Facsimile: (202) 824-3001

Attorneys for Plaintiff Jagex Limited

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAGEX LIMITED,<br><br>                    Plaintiff,<br><br>          vs.<br><br>DOES 1-10,<br><br>                    Defendants. | Case No. 8:11-cv-00969-CJC-MLG<br>Judge: Hon. Cormac J. Carney<br>Ctrm: 9B<br><br>**NOTICE OF *EX PARTE* APPLICATION AND *EX PARTE* APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY AND MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT THEREOF**<br><br>[Filed concurrently with Declaration of Daniel Clough; [Proposed] Order] |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................1

II.     BACKGROUND AND FACTS ........................................................2

III.    ARGUMENT ...................................................................................5

IV.     CONCLUSION ................................................................................9

1

## TABLE OF AUTHORITIES

**Cases**

*ABKCO Music, Inc. v. Stellar Records, Inc.*
96 F.3d 60 (2d Cir. 1996) ............................................................................7

*American LegalNet, Inc. v. Davis*
673 F. Supp. 2d 1063 (C.D. Cal. 2009) ...................................................6, 7

*Arista Records LLC v. Does 1-16*
No. 07-1641 LKK EFB (E.D. Cal. Aug. 23, 2007)....................................6

*Dean v. Barber*
951 F.2d 1210 (11th Cir. 1992) ..................................................................5

*Health Ins. Ass'n of Am. v. Novelli*
211 F. Supp. 2d 23 (D.D.C. 2002) ..............................................................7

*In re Countrywide Fin. Corp. Derivative Litiq.*
542 F. Supp. 2d 1160 (C.D. Cal. 2008) ......................................................6

*Interscope Records. v. Does 1-4*
No. CV-04-131 TUC-JM (D. Ariz. Mar. 25, 2004) ..................................6

*London-Sire Records, Inc. v. Does 1-4*
No. CV 04-1962 ABC (AJWx) (C.D. Cal. Apr. 2, 2004) ..........................6

*Loud Records, LLC v. Does 1-5*
No. CV-04-0134-RHW (E.D. Wash. May 10, 2004)..................................6

*Maclin v. Paulson*
627 F.2d 83 (7th Cir. 1980) ........................................................................5

*Munz v. Parr*
758 F.2d 1254 (8th Cir. 1985) ....................................................................5

*Qwest Comm. Int'l, Inc. v. WorldQuest Networks, Inc.*
213 F.R.D. 418 (D. Colo. 2003) .................................................................6

*Semitool, Inc. v. Tokyo Electron Am., Inc.*
208 F.R.D. 273 (N.D. Cal. 2002) ...........................................................6, 7

*Sony BMG Music Ent't v. Does 1-16*
No. 07-cv-00581-BTM-AJB (S.D. Cal. Apr. 19, 2007).............................6

*Taylor Corp. v. Four Seasons Greetings, LLC*
403 F.3d 958 (8th Cir. 2005).......................................................................7

*UMG Recordings, Inc. v. Does 1-2*
No. CVO4-0960 (RSL) (W.D. Wash. May 14, 2004).................................6

*Valentin v. Dinkins*
121 F.3d 72 (2d Cir. 1997)..........................................................................5

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

*Wakefield v. Thompson*
    177 F.3d 1160 (9th Cir. 1999)............................................................................5

*Warner Brothers Records, Inc. v. John Doe*
    Case No. C-07-04849 JW (N.D. Cal. Oct. 12, 2007)..........................................6

**Rules**

17 U.S.C. section 512............................................................................ iv, 1, 5

NOTICE OF *EX PARTE* APPLICATION AND *EX PARTE* APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY

95241 V1

1 │ TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 │      PLEASE TAKE NOTICE that pursuant to Local Rule 7-19, Plaintiff Jagex

3 │ Limited ("Jagex") hereby moves the Court *ex parte* for an order permitting Jagex to

4 │ take immediate discovery to obtain the identities of the Defendants from one or more

5 │ online payment service providers (OPSPs) through which each Defendant has had

6 │ contact and/or used the OPSP's services to facilitate the acts alleged in the Complaint.

7 │ This *Ex Parte* Application is made pursuant to 17 U.S.C. § 512 (h) and rules 26 and

8 │ 45 of the Federal Rules of Civil Procedure.

9 │      This *Ex Parte* Application is based on this notice of *Ex Parte* Application, the

10 │ attached memorandum of points and authorities and Declaration of Daniel Clough in

11 │ support thereof, the pleadings and documents on file in this case, and such other

12 │ evidence as may be presented to the Court in support of the *Ex Parte* Application.

13 │ As discussed in the Declaration of Daniel Clough, Plaintiff is unaware of the true

14 │ names and identities of Defendants (John Does 1-10), and is unable to provide the

15 │ contact information for such Defendants as required by Local Rule 7-19.  Likewise

16 │ Plaintiff is not obligated to provide notice of this *Ex Parte* Application to these

17 │ fictitious defendants.

18 │

19 │

20 │ Dated:  July 1, 2011            Respectfully submitted,

21 │                             SHOOK, HARDY & BACON L.L.P.

22 │

23 │                             By:  /s/ Natasha L. Mosley

24 │                                 Frank C. Rothrock
                                Natasha L. Mosley

25 │                                 Attorneys for Plaintiff
                                Jagex Limited

26 │

27 │

28 │

95241 V1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Jagex Limited ("Jagex") is a company engaged in the business of developing and selling computer video game software and services, and develops and publishes RuneScape®, the most popular free massively multiplayer online game (MMOG) in the world.  Jagex seeks leave of the Court to serve limited, immediate discovery on the online payment service provider (OPSP) PayPal, Inc. and possibly one or more Internet Service Providers (ISP) to be determined, to determine the true identity of Defendants John Does 1-10. Defendants are users who cheat within the RuneScape® game by downloading and using automated Bot software to circumvent Jagex's technological measures put in place to detect and prevent such "botting." Botting is specifically prohibited by the RuneScape® Terms and Conditions, which every user must agree to while playing RuneScape®.

Jagex now seeks leave of the Court to serve limited, immediate discovery on PayPal, Inc. ("PayPal"), and any ISP associated with any IP address that PayPal may be able to provide for the Defendants, to permit Plaintiff to obtain the true identity of the Defendants, pursuant to 17 U.S.C. § 512(h).  Plaintiff intends to serve a Rule 45 subpoena on such entities seeking documents that identify Defendants' true names, addresses and telephone numbers, e-mail addresses, IP addresses, and Media Access Control ("MAC") addresses, and any other personally identifying information maintained by a subpoenaed entity.  Without the ability to obtain the Defendants' identifying information, however, Plaintiff may never be able to pursue its lawsuit to protect its works from repeated DMCA violations and further breach of contract. (*See* Declaration of Daniel Clough ("Clough Decl."), ¶¶17, 20-21.)  Moreover, the DMCA violations and breaches of contract may be ongoing such that immediate relief is necessary.  Thus, the need for the limited, immediate discovery sought in this *Ex Parte* Application is critical.

95241 V1

## II.    BACKGROUND AND FACTS

Jagex (UK registered company number 03982706) is a Cambridge, UK, based developer and publisher of massively multiplayer online games. (Clough Decl., ¶ 3.) Jagex employs over 450 staff and is widely recognized as an industry-leading company having been awarded numerous prestigious awards including "The Times Top 100 Best Companies" award and was named one of the most successful games studios in the world by the trade publication Develop Magazine. (*Id.* at ¶ 4.)

Since 2001, Jagex has owned and operated the RuneScape game at the website www.runescape.com.  (*Id.* at ¶ 5.)  In 2008 RuneScape was recognized as the world's most popular free online role-playing game by Guinness World Records, with over 130 million accounts created since the launch of the game.  (*Id.*)  The RuneScape Game takes place in a fantasy-themed realm divided into several different kingdoms, regions, and cities.  (*Id.* at ¶ 6.)  Each region offers different types of enemies, resources, and quests to challenge players.  (*Id.*)

Players set their own goals and objectives; RuneScape does not follow a linear storyline.  (*Id.* at ¶ 7.)  Within the game players are represented as customizable avatars, a virtual representation of the player.  (*Id.*)  Players can battle demons and dragons, complete quests, or increase their experience in any of the twenty-five available skills.  (*Id.*)  Players interact with each other through trading, chatting, or by participating in both combative and cooperative mini-games and activities.  (*Id.*)

Gaining new experience levels in RuneScape requires a substantial investment of time and effort in playing the game with many players investing many hundreds of hours over a period of months or even years.  (*Id.* at ¶ 8.)  At one point the three highest ranked players had a cumulative total of over 2500 days in game (an average of approximately 20,000 hours each).  (*Id.*)  All RuneScape avatars represent a significant time, financial and emotional investment on behalf of the player.  (*Id.*)

Jagex offers both a subscription (ad-free) and a free-to-play (advertising supported) version of RuneScape.  (*Id.* at ¶ 9.)  Players who choose to subscribe to

2

95241 V1

1  RuneScape are given access to additional lands, items and skills within the game.

2  (*Id.*)  Advertisements are also displayed on the RuneScape homepage.  Together,

3  advertising and subscription form the core of Jagex's income.  (*Id.*)

4  Prior to being allowed to play RuneScape®, users are required to agree to the

5  Terms and Conditions at http://www.runescape.com/terms/terms.ws.  (*Id.* at ¶ 10.)

6  The Terms and Conditions include the obligation that players follow the "Rules of

7  RuneScape," found at http://www.runescape.com/kbase/guid/rules_of_conduct.  (*Id.*

8  at ¶ 11.)  The Rules of RuneScape preclude the use of macros or third-party software:

9

10  You must not use other software to gain an unfair advantage in our

11  games. This includes automation tools, macros, bots, or auto-typers. You

12  may not circumvent any of our mechanisms designed to automatically

13  log out inactive users.

14

15  You also must not use any game-specific, third-party software that

16  encourages breaking of our rules, or bypasses the normal navigation of

17  our website, or automatically requests pages from our website, or which

18  endangers user accounts.  (*Id.* at ¶ 12.)

19

20  The RuneScape® Terms & Conditions, and relevant portions of the Rules of

21  RuneScape, are attached as Exhibit A.

22  Any use of the RuneScape® game or Software that is not in accordance with

23  the Terms and Conditions is expressly prohibited.  Among other provisions, the Terms

24  and Conditions state that "YOU WILL BE LIABLE FOR ANY LOSS OR DAMAGE

25  [JAGEX] SUFFER[S] ARISING FROM YOUR BREACH OF THIS AGREEMENT

26  OR MISUSE OF A JAGEX PRODUCT."  (Clough Decl., ¶ 13.)

27  The provisions of the Terms and Conditions are designed to protect the integrity

28  of the RuneScape® game by, among other things, preventing players from cheating,

95241 V1

1   and thereby adversely impacting the experience of other users that play fairly.  (*Id.* at

2   ¶ 14.)  The Terms and Conditions provide commercially reasonable contractual

3   protection of Jagex's rights in and to the RuneScape® game.  (*Id.*)

4        Bot Developers develop and sell Bot software that Defendants download and

5   use in contravention of the RuneScape® Terms and Conditions.  (*Id.* at ¶ 15.)  The

6   Bot software logs in, as if a human user, and interacts with the RuneScape® game.

7   (*Id.*)  Through the interaction, the Bot software performs tasks that would otherwise

8   be manually performed by a human user, such as tasks that increase skills of a user's

9   in-game character.  (*Id.*)  The use of Bot software circumvents RuneScape's security

10  measures to gain unfair and unlawful advantages within the RuneScape® game.  (*Id.*)

11       Bot software is sold via various websites, such as via www.rscheata.net and

12  www.OEMbots.com, each of which is owned by Impulse Software, Mark Snellman,

13  and/or Eric Snellman.  (*See* Complaint, Exs. C, D, Doc. No. 1)  While some Bot

14  software is freely distributed, other software requires a one-time payment or recurring

15  subscription fee.  (*See* Complaint, Ex. D, pp 7-12.)  These fees may be paid to Bot

16  developers via PayPal®, or through other means.  (*Id.*)

17       Plaintiff is unaware of the true names and identities of Defendants (John Does

18  1-10), because the unnamed Defendants include those users who have successfully

19  circumvented Jagex's automated technological measures.  (*See* Clough Decl., ¶¶ 17,

20  20-21.)  The unnamed Defendants are the users who have signed up to play the

21  RuneScape® game via the web site www.RuneScape.com, and thereby agreed to

22  abide by the RuneScape® Terms and Conditions in exchange for being allowed to

23  play RuneScape®, and who have used one or more Bots to circumvent Plaintiff's

24  technological measures in violation of the Digital Millennium Copyright Act, and in

25  violation of the RuneScape® Terms and Conditions.

26       On information and belief, a significant number of Defendants have purchased

27  Bot software using the PayPal® service.  (*See* Complaint, ¶ 33.)  Users of PayPal

28  must register with the service before being permitted to complete transactions.  (*See*

---

4

95241 V1

1    Ex. B, PayPal Signup Screens.)  The registration process requires the user to disclose
2    certain personally identifying information to PayPal®, including a legal name, email
3    address, physical address, and phone number, and acceptance of the PayPal® User
4    Agreement.  (*Id.*)   It is this information that Jagex seeks, in addition to any Internet
5    Protocol (IP) address information maintained by PayPal, Inc. so that Jagex may
6    determine the true identity of the Defendants and seek the redress set out in the
7    Complaint.  PayPal has indicated to that it will disclose information to a third party
8    regarding its registered users if served with a subpoena.  (*See* Ex. C, PayPal Privacy
9    Policy, p. 3.)
10          The only way to identify users who have successfully circumvented Plaintiff's
11   automated technological measures is to obtain discovery from one or more payment
12   service providers, such as PayPal®, to learn the identity of Bot software purchasers.
13   (Clough Decl., ¶ 21.)
14
15   **III.    ARGUMENT**
16          17 U.S.C. § 512 (h) of the Digital Millennium Copyright Act specifically grants
17   courts the authority to issue subpoenas to learn the identities of unknown infringers.
18   Courts, including this circuit, also routinely allow discovery to identify "Doe"
19   defendants.  *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (error to
20   dismiss unnamed defendants given possibility that identity could be ascertained
21   through discovery); *Valentin v. Dinkins*, 121 F.3d 72, 75-76 (2d Cir. 1997) (vacating
22   dismissal; pro se plaintiff should have been permitted to conduct discovery to reveal
23   identity of the defendant); *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) (error
24   to deny the plaintiff's motion to join John Doe defendant where identity of John Doe
25   could have been determined through discovery); *Munz v. Parr*, 758 F.2d 1254, 1257
26   (8th Cir. 1985) (error to dismiss claim merely because the defendant was unnamed;
27   "Rather than dismissing the claim, the court should have ordered disclosure of the
28   Officer Doe's identity"); *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980) (where

1    "party is ignorant of defendants' true identity . . . plaintiff should have been permitted

2    to obtain their identity through limited discovery").

3        Indeed, in copyright infringement cases brought by record companies against

4    Doe defendants for infringing copyrights over peer to peer (P2P) networks, many

5    courts, including this Court, have granted Plaintiff's motions for leave to take

6    expedited discovery. *See, e.g., Order, London-Sire Records, Inc. v. Does 1-4*, No. CV

7    04-1962 ABC (AJWx) (C.D. Cal. Apr. 2, 2004); Order*, Warner Brothers Records, Inc.*

8    *v. John Doe*, Case No. C-07-04849 JW (N.D. Cal. Oct. 12, 2007); Order, *Maverick*

9    *Recording Co. v. Does 1-4*, Case No. C-04-1135 MMC (N.D. Cal. April 28, 2004);

10   Order, *Arista Records LLC v. Does 1-16*, No. 07-1641 LKK EFB (E.D. Cal. Aug. 23,

11   2007); Order, *Sony BMG Music Ent't v. Does 1-16*, No. 07-cv-00581-BTM-AJB (S.D.

12   Cal. Apr. 19, 2007); Order, *UMG Recordings, Inc. v. Does 1-2*, No. CVO4-0960 (RSL)

13   (W.D. Wash. May 14, 2004); Order, *Loud Records, LLC v. Does 1-5*, No. CV-04-

14   0134-RHW (E.D. Wash. May 10, 2004); Order, *Interscope Records. v. Does 1-4*, No.

15   CV-04-131 TUC-JM (D. Ariz. Mar. 25, 2004), copies attached as Exhibit D. This

16   Court should not depart from its well-reasoned decisions, or the well-reasoned

17   decisions of other courts that have addressed this issue directly.

18       This Court allows parties to conduct expedited discovery in advance of a Rule

19   26(f) conference where the party establishes "good cause" for such discovery. *See*

20   *American LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066-1067, 1179 (C.D. Cal.

21   2009); *In re Countrywide Fin. Corp. Derivative Litiq.*, 542 F. Supp. 2d 1160, 1179

22   (C.D. Cal. 2008); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-76

23   (N.D. Cal. 2002). Plaintiff has easily met this standard.

24       First, good cause exists where, as here, the complaint alleges claims of DMCA

25   infringement. *See Semitool*, 208 F.R.D. at 276; *See also Qwest Comm. Int'l, Inc. v.*

26   *WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003) ("The good cause

27   standard may be satisfied . . . where the moving party has asserted claims of

28   infringement and unfair competition."). This is not surprising, since such claims

1    necessarily involve irreparable harm to the plaintiff.  *See Taylor Corp. v. Four*

2    *Seasons Greetings, LLC*, 403 F.3d 958, 968 (8th Cir. 2005); *Health Ins. Ass'n of Am.*

3    *v. Novelli*, 211 F. Supp. 2d 23, 28 (D.D.C. 2002) ("A copyright holder [is] presumed

4    to suffer irreparable harm as a matter of law when his right to the exclusive use of

5    copyrighted material is invaded.") (quotations and citations omitted); *ABKCO Music,*

6    *Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 66 (2d Cir. 1996).  The DMCA violations

7    alleged here warrant similar treatment as would allegations of copyright

8    infringement.

9         Second, good cause exists because the narrowly tailored discovery requests do

10   not exceed the minimum information required to advance this lawsuit and will not

11   prejudice Defendants.  *See American LegalNet*, 673 F. Supp. 2d at 1066 ("Good cause

12   exists 'where the need for expedited discovery, in consideration of the administration

13   of justice, outweighs the prejudice to the responding party").  Plaintiff seeks immediate

14   discovery to obtain information to identify the Defendants--information that may be

15   erased or otherwise unavailable very soon.  Plaintiff (who is vulnerable to continued

16   harm by Defendant's continued DMCA violations) cannot wait until after the Rule 26(f)

17   conference (ordinarily a prerequisite before propounding discovery) because there is

18   no known defendant with whom to confer (and thus, no conference is possible).  There

19   is no prejudice to Defendants because Plaintiff merely seeks information to identify

20   Defendants, protect the integrity of the RuneScape® game, and to serve them, and

21   Plaintiff agrees to use the information disclosed pursuant to the subpoenas only for the

22   purpose of stopping further DMCA violations, preventing further breaches of the

23   RuneScape Terms and Conditions, and protecting Jagex's rights under Title 17 of the

24   United States Code (U.S. Copyright Act) forming the bases for the claims set forth in

25   the Complaint.

26        Third, courts regularly grant expedited discovery where such discovery will

27   "substantially contribute to moving th[e] case forward."  *Semitool*, 208 F.R.D. at 277.

28   Here, the present lawsuit cannot proceed without the limited, immediate discovery

---

7

95241 V1

1   Plaintiff seeks because there is no other information Plaintiff can obtain about
2   Defendants without discovery from PayPal®.  Plaintiff's Complaint alleges prima
3   facie claims for violation of the DCMA and breach of contract, among other claims.
4   Absent limited, immediate discovery, Plaintiff will be unable to obtain redress for any
5   of these DMCA violations and breaches of contract.

6          Upon the Court granting this *Ex Parte* Application, Plaintiff will serve a
7   subpoena on PayPal® requesting documents that identify the true name and other
8   information about Defendants within 15 business days.  The information will be
9   sought using information known regarding one or more existing Bot developers, e.g.,
10  Impulse Software, Mark Snellman, and Eric Snellman.  PayPal® then will be able to
11  notify its registered users that this information is being sought, and those users may
12  raise any objections before this Court in the form of a motion to quash prior to the
13  return date of the subpoena.

14         In the event that the information that PayPal® has is insufficient to reveal the
15  true identity of the Defendants, the registration (and potentially other) information
16  PayPal has will be of great assistance in identifying the Defendants.  For example, it is
17  believed that PayPal will be able to at least provide an IP address from which
18  registered users (Defendants) signed on and transacted to purchase the Bot software.
19  Armed with this information, plaintiff can identify Defendants' Internet service
20  provider (ISP) and by way of the current motion, Plaintiff also seeks leave to take
21  discovery of such ISP entities as may be necessary to obtain the true identity of the
22  Defendants.

23         When given a Defendant's IP address and the date and time of infringement,
24  an ISP quickly and easily can identify the user associated with the IP address,
25  including the name and address of a Defendant (i.e., the ISP's subscriber) because
26  that information is contained in the ISP's subscriber activity log files.  (Clough
27  Decl., ¶ 18.)  Plaintiff understands that ISPs typically keep log files of subscriber
28  activities for only limited periods of time — which can range from as short as a few

95241 V1

1    days, to a few months — before erasing the data.  ( *Id.* at ¶ 19.)  As the information

2    maintained by the ISP may prove necessary for identifying the Defendant, Plaintiff

3    wants to minimize the possibility that an ISP will erase this crucial information.

4

5    **IV.    CONCLUSION**

6          For the foregoing reasons, the Court should grant the *Ex Parte* Application

7    and enter an Order substantially in the form of the attached Proposed Order.

8

9

10   Dated:  June ___, 2011                    Respectfully submitted,

11                                             SHOOK, HARDY & BACON L.L.P.

12

13                                             By:_____
                                                    Frank C. Rothrock
14                                                  Natasha L. Mosley
                                                    Attorneys for Plaintiff
15                                                  Jagex Limited

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF *EX PARTE* APPLICATION AND *EX PARTE* APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY

95241 V1

# EXHIBIT A

| Home | Play Now | Account | Game Guide | Community | Help | Log In |
|------|----------|---------|------------|-----------|------|--------|





**Location:** Home > Terms & Conditions

## TERMS & CONDITIONS

If you were a resident of France when you created your account and you created your account on or after 20th August 2008, click here to view the Terms & Conditions which apply to you.

If you were a resident of Germany when you created your account and you created your account on or after 14th February 2007, click here to view the Terms & Conditions which apply to you.

If you were a resident of Brazil when you created your account and you created your account on or after 18th November 2008, click here to view the Terms & Conditions which apply to you.

Effective Date: 13th May, 2011

**Terms & Conditions**

**Introduction**
This website is owned and operated by Jagex Limited ("Jagex"), a company registered in England and Wales (registered number 3982706). Our registered office is at St John's Innovation Centre, Cowley Road, Cambridge, CB4 0WS, United Kingdom. Our VAT number is 791 951 784.

**Definitions**
"Jagex Product(s)" is used as shorthand for our online games including all Jagex websites used to play those games.

References to "Stopping" an account include all or any of: locking, temporarily or permanently banning, or temporarily or permanently muting the account. If your account is muted, you can continue to play but will not be able to use free text chat. If your account is banned, you will not be able to access your account at all. NB Membership credit continues to expire if accounts are muted or banned.

**Applicability**
Please read these terms and conditions carefully. Your accepting them in full is a condition of your use of a Jagex product (whether or not you subscribe). If you don't agree with any part, please don't accept them or use the Jagex product.

If you have any questions about these terms and conditions, please contact us via email at lawcontact@jagex.com and do not use the site until you are satisfied with and can accept these terms and conditions in full.

**Changes**
We may change these terms and conditions to reflect: changes in applicable laws; regulatory or security requirements; relevant guidance or codes of practice; technical alterations to Jagex Products; and to improve clarity and consistency. Please check the terms and conditions whenever you use a Jagex Product. If you are not a subscriber, we will treat your continued use of a Jagex Product as acceptance of these changes from their effective date as shown above. If you are a subscriber, we will treat you as bound by the changes on the first renewal date for your subscription after the effective date and so you should cancel your subscription (as explained below) before this renewal date if you don't like the proposed changes.

**A SPECIAL NOTE ABOUT PRETEENS AND USERS UNDER 18**
Jagex's products (RuneScape, War of Legends, Stellar Dawn and FunOrb) and Jagex's websites are not targeted to users under 13 years of age. If you are under 13 years of age, from 24 November 2010 you will not be permitted to create an account for any of these products. If you are under 13 years of age and created an account prior to November 24, 2010, you will be allowed to continue playing with the limitations placed on users under 13 years of age as explained below.

If you are under 13 we may be able to direct you to other products that may be suitable for you. If you are under 13 and created an account prior to 24 November 2010, you will be unable to disclose personal data through the game or website. If we find out that any personal data we have collected is from someone under 13, we will automatically delete it. We recommend that, for existing accounts, parents / guardians should play together with their children.

If you are under 13, have created an account prior 24 November 2010 and subscribe to the members' version of our game you are representing (i.e. making a promise) that you have consent from your parents / guardian to use Jagex Products in accordance with our terms and conditions and privacy policy. Nonetheless, we may Stop any account if we are not satisfied that such consent has been given or that such consent does not comply with local laws regarding users who are under 13 years of age.

If you are under 18, by using our website you are representing (i.e. making a promise) that you have consent from your parents / guardian to use Jagex Products in accordance with our terms and conditions and privacy policy. We may Stop any account if we are not satisfied that such consent has been given.

If we are told by a parent / guardian that their child has lied about their age when registering for Jagex Products, we will Stop the account provided we have information which satisfies us that the reporting person is indeed the parent or guardian.

Parents can find more information about the game and how to contact us in the Parents' Guide.

### Safety / abuse
Before using any Jagex Product you should read the guides found in our Safety & Security Guidelines. It is particularly important to read the Play Safely Guide and the Health & Safety Guide. Parents of those under 18 should review our safety materials in the Player Safety section of the Parents' Guide.

Whilst we reserve the right to monitor and take action if any Jagex Product is used inappropriately (including the posting of objectionable material on the chat facility or otherwise), we cannot promise that any Jagex Product won't contain such content or that we will remove / modify any particular content. Nor can we guarantee that users will comply with our terms and conditions or otherwise behave appropriately.

If you are the victim of offensive or inappropriate behaviour or receive any other unwanted communications, you should use the built-in facilities to block the messages. (See this article for guidance on blocking messages.) You should report all inappropriate behaviour to us via the in game "Report abuse" button as well as seeking appropriate external help, for example from parents or law enforcement authorities. If you continue to suffer problems, or are not satisfied, then you must stop using the relevant Jagex Product(s).

### Your account
To use many features of Jagex Products, we require you to create an account. We grant valid account holders a non-exclusive, non-transferable license for the period of membership to use Jagex Products and to download and use our client software and connect to our servers solely to use Jagex Products in accordance with these terms and conditions.

You must not choose a username that infringes the rights of any third party, impersonates Jagex staff or other users, which is deliberately confusing or which is offensive, racist, obscene, hurtful, unlawful or otherwise inappropriate or which breaches the username requirements specified on our site or our Rules of Conduct. We reserve the right to make such assessment in our sole discretion, change any username for any reason or take such other action as we believe appropriate.

You agree to keep your password safe at all times and not to disclose it to any other person. You are responsible for the activities of all persons who use your password to gain access to your account. To help ensure the safety of your password, you must keep your computer free of viruses and other malicious code including Trojans. You must use your password in accordance with the password requirements specified on our site and our Rules of Conduct. Real Jagex staff will never ask you for your password. If you believe that someone has stolen your password or otherwise gained access to your account - submit an Account Recovery request via the Account Recovery link on the website of any Jagex Product. To see our guidance about password security and safety practices, please click here.

### Rules
You must comply with the current version of any rules, guidelines, codes of conduct or instructions specified in any Jagex Product including our game rules, the current version of which is linked to here and incorporated herein by reference. Any use of any Jagex Product not in accordance with the game rules exceeds the scope of the license granted by these Terms & Conditions.

### Our rights
If, acting reasonably, we consider that our Terms and Conditions have or may have been breached, or that there has been fraudulent, unlawful or abusive activity, or that it is necessary in order to prevent or stop any harm or damage to us, to any Jagex Product, to other players or the general public, we may Stop (as defined above) any or all accounts of Jagex Products which we think are connected with the offender subject to such right of appeal as is specified on our website and/or restrict access to or delete virtual currency or anything acquired by means of virtual currency. Such actions may result in loss of membership credit and/or loss of real money paid as part of any item / account trading or other prohibited transaction.

To prevent or remedy breach of our Terms and Conditions or any harm or damage to us, to any Jagex Product or to other players or the general public , we may automatically or manually monitor, censor (including rejection or removal of any content) and/or record public or private chat or other activities in any Jagex Product.

### Intellectual property rights
Jagex®, RuneScape® and FunOrb® are registered trade marks of Jagex Limited in the United Kingdom, the United States and other countries.

You must not reverse-engineer, decompile or modify any Jagex Product client software in any way (except to the extent allowed by applicable law). You must not use a modified/customised version of the client software or attempt to sub-license it. You must not create or provide any other means by which any Jagex Product may be played by others (including, without limitation, replacement or modified client/server software, server emulators).

Materials (including without limit all information, software, data, text, photographs, graphics, sound and video) placed on any Jagex Product by us or on our behalf are protected by copyright and other intellectual property rights of ourselves or our business partners / suppliers / advertisers. You may not use these materials or any Jagex Product except in accordance with these terms and conditions and for personal (i.e. non-commercial) use only.

You agree that all intellectual property or other rights in any game character, account and items are and will remain our property.

By posting chat or other materials on any Jagex Product, you grant us a non-exclusive, perpetual, worldwide, royalty free, worldwide license to use and/or modify such materials on any Jagex Product as we see fit.

You agree that by submitting any material of any kind to us for any purpose connected with any Jagex Product (non-exhaustive examples are suggestions and ideas for any game or contributions to any Gallery page), you are giving us a non-exclusive, perpetual, worldwide, royalty-free license to use and/or modify the submitted materials as we see fit. You agree to waive any moral rights to the extent permitted by law and that you will not withdraw the submission or attempt to make a charge for its use. Furthermore you guarantee that you are the exclusive copyright holder in relation to the submission and that the submission in no way breaches the rights of any other person or entity.

## Subscription
You need a subscription to use certain features of Jagex Products. If you apply for a subscription, you must ensure all the information that you submit is true and accurate (including without limit your credit card number and expiration date, and other payment details) and that you have appropriate parental or guardian consent as applicable. You agree to pay all subscription fees specified when you apply including all applicable taxes. Unless otherwise stated, all prices shown for EU countries include VAT.

By submitting your order you are making an offer to subscribe to the relevant part of the Jagex Product(s). Your offer is accepted and a binding contract occurs when we send a message to your account mail inbox confirming that your payment has been received or if you log in into a subscribers-only part of a Jagex Product (whichever comes first).

All subscription payments will continue to be taken in advance at the relevant intervals (e.g. monthly in the case of monthly subscriptions) until you cancel your subscription (see below).

Payments by credit cards are also subject to our credit card agreement which forms part of these terms and conditions.

We reserve the right to alter the amount or terms of our subscription fees at any time. This will only apply to those who, following the change, take out new subscriptions or re-subscribe (their previous subscriptions having expired) and specifically agree to the new fees / terms.

We reserve the right to charge you for any unauthorized use of your subscription by third parties.

## Cancellation by you
You may cancel your subscription at any time by clicking here or selecting the "Cancel Subscription" link from the account management section on the website of any Jagex Product.

Upon cancellation you will not be charged any further subscription fees. No payments already made will be refunded (wholly or partly) but you can of course use up any unused membership credit in the account.

For important information about the legal cancellation rights of EU consumers, please click here.

## Virtual Currency (WoLCash/JCredits)
In certain of our games, we offer virtual currency for sale or, in our discretion, as free promotions. Virtual currency can be redeemed (ie used) to acquire certain digital goods / services, which we describe below as "Items". If you obtain virtual currency, you must check that it has been correctly credited to your account and tell us immediately if not.

PLEASE TAKE NOTE that virtual currency is subject to very important restrictions:

Virtual currency expires and will be deleted if it has not been redeemed within a certain period after acquisition so you should redeem it as soon as possible. The expiry period is whatever we specify when you acquire the virtual currency or, if we haven't specified a time limit, three months from acquisition.

Unless we say otherwise on our website, virtual currency can only be redeemed within the world of the game where you acquired it. We may at any time change or remove any or any type of Item for which virtual currency can be redeemed as well as the amount of virtual currency needed to acquire a particular Item. You may only redeem virtual currency for items on offer at the time of redemption.

Virtual currency does not have any inherent value and is not your own private property. You can only use them to acquire those items which we decide in our discretion to offer in return for virtual currency. We do not provide any cash or refunds for virtual currency (except as required by law). Virtual currency is for your personal use only. You must not sell or transfer it or make it available to anyone else or attempt to do so or encourage anyone else to do any of these things.

We may impose additional restrictions concerning the acquisition or redemption of virtual currency. For example we may cap the amount of virtual currency which can be acquired or held or redeemed in any particular period or we may impose restrictions based on your country of residence.

We may restrict access to or delete virtual currency or Items: (1) as outlined under "Our Rights" above; (2) if the virtual currency was awarded in error; or (3) if a payment for virtual currency is charged back or otherwise cancelled or reversed.

We may at any time decide to end the entire virtual currency program for all or any of our games. Before we delete the unused virtual currency, we will endeavour to give you at least four weeks to redeem it.

## Privacy policy
For a description of how we use your personal data, please see our Privacy policy.

## Functioning of Jagex Products
We will do our best to maintain operation of Jagex Products and rectify faults as quickly as possible. We may have to suspend

operation of a Jagex Product without notice for repair, maintenance, improvement or other technical reason. If so, we will do our best to ensure that the suspension is as short as possible. We cannot accept responsibility for such suspensions or for any interruption or error caused by circumstances outside our reasonable control.

We cannot guarantee that Jagex Products will work with any particular computer equipment or in conjunction with any particular software or connectivity services. We do not accept responsibility for such equipment, software or services.

### Third parties
Jagex Products may include links to internet sites or other technologies supplied by third parties including sites / technologies which enable you to pay by means of payment methods provided by third parties. We make no promises about those sites or their content, products or services as these are outside our reasonable control.

### OUR AND YOUR LEGAL RESPONSIBILITY
WE DO NOT ACCEPT LEGAL RESPONSIBILITY FOR ANY LOSS OR DAMAGE CAUSED BY US OR OUR EMPLOYEES OR AGENTS IN CIRCUMSTANCES WHERE (A) THERE IS NO BREACH OF A LEGAL DUTY OF CARE OWED TO YOU BY US OR BY ANY OF OUR EMPLOYEES OR AGENTS; (B) SUCH LOSS OR DAMAGE IS NOT A REASONABLY FORESEEABLE RESULT OF ANY SUCH BREACH; OR (C) SUCH LOSS OR DAMAGE RELATES TO A BUSINESS. YOU AGREE TO WAIVE ANY LEGAL DUTY OF CARE OWED TO YOU BY JAGEX, TO THE MAXIMUM EXTENT ALLOWED BY LAW.

YOU WILL BE LIABLE FOR ANY LOSS OR DAMAGE WE SUFFER ARISING FROM YOUR BREACH OF THIS AGREEMENT OR MISUSE OF A JAGEX PRODUCT.

### Transfer
We may transfer all or part of our rights or duties under this agreement provided we take reasonable steps to ensure that your rights under this agreement are not prejudiced. As this agreement is personal to you, you may not transfer any of your rights or duties under it without our prior written consent.

### General
Nothing in these terms and conditions affects your statutory rights as a consumer. Headings above are for guidance only and not binding. If we fail to enforce any provision of these terms and conditions, that failure will not preclude us from enforcing either that provision (or any similar provision) on a later occasion. If any provision of these terms and conditions is found by a court to be invalid, we agree that the court should endeavour to give effect to the parties' intentions as reflected in the provision and that other provisions remain in full force and effect. Except for clauses excluding or restricting our liability a person who is not a party to this agreement shall have no rights under the Contracts (Rights of Third Parties) Act 1999 to enforce any term of this agreement. These terms and conditions are governed by English law and any dispute connected with them or Jagex Products will be decided only by the courts of the United Kingdom.

### Complaints
If you are dissatisfied with this website or any aspect of it, please contact us via the forms on our website or write to our registered office above.

This website and its contents are copyright © 1999 - 2011 Jagex Ltd
Use of this website is subject to our Terms & Conditions and Privacy Policy.



# A WEEKEND OF
# STRAIGHT PWNAGE

**Home**      **Play Now**      **Account**      **Game Guide**      **Community**      **Help**      **Log In**

Location: Home > Customer Support > Rules of RuneScape

## RULES OF RUNESCAPE

Introduction | Honour | Respect | Security

### Introduction

RuneScape is played by millions of people from a great many different countries and a wide range of cultural backgrounds. The RuneScape player community is much like the larger, real-world community: while most people within it are honest, courteous and respectful of others, there are a small number of individuals whose behaviour has the potential to alienate or offend. It is for this reason that we have an Offence System, which has been designed to help protect our players from this disruptive minority.

If, in the course of play, you come into contact with another player whose behaviour you consider offensive or aggressive, there are a number of options available to you. The first is to add the player to your Ignore List, or adjust your chat settings, so they cannot continue to bother you. Most minor incidents can be dealt with in this way, and neither you nor Jagex will need to take any further action.

Sometimes, however, you might encounter a player whose behaviour is particularly offensive. In such cases, you can use the Report Abuse feature to report the player to the Jagex Player Support team. Player Support will then investigate the incident, and if the reported player is deemed to have behaved inappropriately, or broken any of our rules, appropriate action will be taken to minimise the chances of that player causing further disruption.

Occasionally, innocent players might find themselves falsely accused of committing an offence, perhaps because they made an innocuous comment that was misinterpreted by another player. For this reason, reported incidents will be investigated thoroughly, and any evidence will be carefully evaluated, to ensure that innocent players are not given unwarranted penalties. Players who feel that they have been falsely accused of committing an offence should submit an appeal via the account management page.

The RuneScape rules are organised into three categories: Honour, Respect and Security. Please take some time to familiarise yourself with these rules before playing RuneScape.

Back to the top

### Honour

We expect our players not to cheat or indulge in dishonest behaviour. With this in mind, the following behaviour is deemed unacceptable:

Macroing, and use of bots or third-party software
Real-world trading
Buying, selling or sharing an account
Multiple logging-in
Knowingly exploiting a bug
Jagex staff impersonation
Password, account, bank PIN or item scamming
Advert blocking

Exhibit A
14

Encouraging others to break the rules

**Back to the top**

## Respect

Players and Jagex staff are entitled to the respect of the other members of the player community. With this in mind, the following behaviour is deemed unacceptable:

Discrimination of any kind, whether based on another person's race, nationality, gender, sexual orientation or religious beliefs
Solicitation
Threatening another person, or bullying of any kind
Using obscene or inappropriate language
Spamming, or disruptive behaviour
Misuse of the forums

**Back to the top**

## Security

It is of the utmost importance that the personal security of our players is not jeopardised while playing RuneScape. With this in mind, the following behaviour is deemed unacceptable:

Asking for or providing contact information such as full names, ages, postal or email addresses, telephone numbers or bank details
Discussing or advocating illegal activity of any kind, such as the use of illegal drugs
Advertising other websites

**To find out more about our offence system, click here.**

**Back to the top**

**More articles in Customer Support**

> **Rules of RuneScape**
> **Password Support**
> **Offence Appeals**
> **Locked Account Recovery**
> **Reporting Abuse**

**Further Help**
If this article does not help you, you may find the following sections of the RuneScape site helpful:

> **Visit the forums**
> **Game-related questions**

| | |
|---|---|
| Search for: | |
| Category: | - ALL - |
| Subcategory: | - ALL - |

Criteria:
☑ Title    ☑ Keywords    ◉ All
☑ Description    ☑ Body    ○ Any

For help on searching, see our **Search Tips** page.

Submit Query

This website and its contents are copyright © 1999 - 2011 Jagex Ltd
Use of this website is subject to our Terms & Conditions and Privacy Policy.





**Home**          **Play Now**          **Account**          **Game Guide**          **Community**          **Help**          **Log In**

**Location:** Home > Customer Support > Rules of RuneScape > Macroing, and use of bots or third-party software

## MACROING, AND USE OF BOTS OR THIRD-PARTY SOFTWARE

**Effective date: 12th May 2009**

You must not use other software to gain an unfair advantage in our games. This includes automation tools, macros, bots, or auto-typers. You may not circumvent any of our mechanisms designed to automatically log out inactive users.

You also must not use any game-specific, third-party software that encourages breaking of our rules, or bypasses the normal navigation of our website, or automatically requests pages from our website, or which endangers user accounts.

**Related Questions**

Below are some related questions which may help you to further understand and follow this rule:

1. Why do we have this rule?

2. What type of third-party software is NOT allowed?

3. What do you mean by "software"?

4. How does the new macro detection system work?

5. Will I be able to appeal against a ban for macroing?

6. What is AFK Training?

**1. Why do we have this rule?**

First, we don't want players to download third-party software from untrusted sources that can, and often do, contain keyloggers, trojans and viruses. Many players have had their accounts stolen because they have inadvertently installed hacking software on their machines. Even if the author has good intentions, an unintended flaw in their software could still put your account at risk. Some supposedly reputable software has had problems in the past. There are also cases of people deliberately writing software which looks like a useful add-on, but actually just steals your password.

Secondly, macroing ruins the game for everyone else. We don't want some players having an unfair advantage and filling up all the best training spots with bots. This game is designed to be enjoyed by humans, not bots. In the past, when we have not enforced this rule, we have rapidly found it quickly spoils the game, and players themselves start demanding that we enforce it. Now we enforce it thoroughly.

Back to the top

**2. What type of third-party software is NOT allowed?**

This includes, but is not limited to the following third-party software:

1. Software that attempts to communicate directly with our game worlds.
2. Software that monitors, modifies or decrypts the communications between our game applets and our game worlds.
3. Software that generates input to our game applets. This includes software that automatically moves the mouse pointer or generates mouse clicks or key presses.
4. Modified or replacement versions of our game applets. Reverse-engineering our game applets is strictly prohibited. Using a modified version of our game applets is not permitted for any reason. Third-party software that displays pages/content from our website(s), and that has specific features (i.e. toolkits) must not be used to access our website unless that software conforms with all of the other rules, and the following additional rules:
   ◦ It must not encourage rule-breaking or endanger users.
   ◦ It must not contain adverts or links to websites that encourage rule-breaking or endanger users.
   ◦ It must not automatically make repeated page/content requests from our website or otherwise make excessively bandwidth-intensive requests from our servers (each page/content request should only be in direct response to a user request each time).
   ◦ It must not bypass the normal navigation of our website for users wishing to reach the game worlds. The software should initially only point at the front page of our websites, and should require the user to navigate through the website normally to reach the game worlds. The software must not contain or acquire direct links to the game applet.
   ◦ It must not hide or encourage the hiding of any of the adverts on our website. To avoid encouraging users to hide the advert above the game, the pane displaying pages from our website must default to at least 630 pixels high (if viewed on a screen with a resolution higher than 800x600), and it must not be possible to resize it to less height than that, i.e. the page must be displayed in such a way that both the game and advert are fully visible at the same time.
   ◦ It must not attempt to make it easier to enter a busy game world than it would be for users not using the software. It must not contain any features to make it easier to enter or monitor busy worlds.
   ◦ If the software has its own integrated chat feature, separate from the game chat, it should make it very clear to users that this chat is not part of our games and is not official, endorsed, or moderated by Jagex in any way. Furthermore, this chat should still be moderated (just not by us), and the moderators should not allow chat which infringes our Rules of Conduct. To avoid confusion with the official game chat, moderators of the external chat should not be indicated with a silver or gold crown. If the chat is IRC based, then the software should only allow access to IRC channels which conform with the above rules.

In any case, the use of such software is not recommended. We do not recommend the use of ANY third-party software, as it is potentially extremely dangerous. Please be aware that there is software out there that claims to be a great add-on, but actually installs a keylogger on your computer and steals your password! You should also be aware that there is dangerous software around that won't necessarily be spotted by your anti-virus software. Scanning downloads is, of course, a very good idea, but it still doesn't 100% eliminate the risk.

Back to the top

**3. What do you mean by "software"?**

Software means any type of program, including: downloadable software (e.g an .exe file), or web-based software (e.g a website set up to perform a similar function with flash, java, javascript or serverside scripts).

Back to the top

**4. How does the macro detection system work?**

Our macro detection system monitors activity on our servers and detects suspicious behaviour. This evidence is reviewed by our team of experts who either confirm or reject the system's analysis. Jagex will not reveal the exact mechanics of how this system works, because this would make circumvention easier.

Back to the top

**5. Will I be able to appeal against a ban for macroing?**

Our policy has always been that we do not tolerate any form of cheating. We do not ban accounts lightly. Significant evidence is always collected before any action is taken against a player. We will not reveal the evidence that we have collected, since most cheats only want to know the evidence so that they can avoid getting caught the next time. Because we take breaches of this rule very seriously, we do not allow players an appeal if they have been banned for using macro software. For more information on Offence Appeals, click here.

**Back to the top**

**6. What is AFK training?**

AFK training is Away From Keyboard training. While you are playing on our games, you must be at the computer. Away-from-keyboard training is not allowed, and you should log out when you leave the computer.

*To keep RuneScape enjoyable for everyone, please observe and follow our rules. We will not tolerate disruptive players, and if you break our rules your account is likely to be banned or muted. Members who are banned or muted for breaking our rules are not entitled to any sort of refund.*

This website and its contents are copyright © 1999 - 2011 Jagex Ltd
Use of this website is subject to our Terms & Conditions and Privacy Policy.



# EXHIBIT  B

**PayPal**

Personal >

**How PayPal Works**

# Getting Started



## 1. Sign Up

Sign up for a PayPal account. It's free to sign up and easy to do.



## 2. Choose a Way to Pay

During sign up, you can link your debit card or credit card to your PayPal account. You can also add money to your PayPal account via MoneyPak®. For your protection, your personal financial information is stored securely with PayPal and never shared with the sellers.



## 3. Shop with PayPal

Speed through checkout at your favorite online stores without having to enter your payment details over and over again.



Already have an account? Log In

View Demo: Account Setup
**FAQs**
How does PayPal work?

It's simple, really. When you shop online, choose PayPal when paying for your items. You'll be asked to log into your PayPal account using your email address and password. Click to confirm your payment and then you're done.

By the way, you can also use your PayPal account to send money and get paid online.

Is PayPal secure?

Your financial security is our highest priority. You're protected from any unauthorized payment made from your PayPal account.

Can I use PayPal and still collect credit card reward points?

Absolutely. In fact, we offer the PayPal Extras MasterCard® which features its own valuable rewards program. Once approved – which takes about 30 seconds – your card will be automatically linked to your PayPal account. Plus, you'll enjoy these great benefits:

- Earn up to 3X Reward Points for every $1 spent, including 2X Reward Points on PayPal and eBay transactions
- Redeem reward points for cash back as a credit into your PayPal account, gift cards, merchandise, and travel
- Enjoy Platinum MasterCard benefits everywhere MasterCard is accepted – online and offline

- Zero fraud liability for purchases
- Learn More

Will PayPal let me buy something now, and pay for it later?

You bet. PayPal offers a payment choice called Bill Me Later®, which lets you buy now and pay later.* You can choose Bill Me Later on eBay and at more than 1,000 online stores – and that number is growing all the time. That's not all:

- Approval takes only a few seconds
- There's no annual fee
- It's a flexible way to pay without using your credit card

For more info and a comprehensive list of participating merchants, click here

*Interest applies if paid over time. Not available at all PayPal or eBay stores. eBay exclusions include the following categories: adult, digital goods, weapons, alcohol, motors (including parts and accessories), and currency. US sellers with third-party checkout are also excluded.

Can I use PayPal without money in my PayPal account?

Yes, you can. To pay for things or to send money, simply link your bank account or credit card to your PayPal account. You can do this when you sign up for an account, or by updating your PayPal account profile. To view and edit your profile, log in to your PayPal account and click on Profile at the top of the page.

This does not apply to Student Accounts. If you have a Student Account, you must have money in your account to use it.

How do I use my bank account, credit card, or debit card with PayPal?

It's easy. When you make a payment or send money, PayPal uses your PayPal balance first to cover the payment. If your PayPal balance doesn't cover the transaction, the bank account, credit card, or debit card you linked to your PayPal account will be used for the payment.

Can I use PayPal if I don't have a bank account or credit card?

Yes, you can. You can add money to your PayPal account with MoneyPak. MoneyPak allows you to enjoy the benefits of PayPal without using a credit card or bank account. Pick up a MoneyPak at over 40,000 retailers for a service fee of $4.95 or less. Details

## Related Links

How PayPal Works

Getting Started with PayPal

Managing Your PayPal Account

Great Ways to Use PayPal

Top Ten Things to Know about PayPal

Got questions? Visit the
Community Help Forum

Copyright © 1999-2011 PayPal. All rights reserved.

**PayPal**

<u>Secure</u>

## Create your PayPal account

Your country or region

| United States ▾ | 🇺🇸 <u>Select Country</u> |

Your language

| English ▾ | <u>Select Language</u> |

Already have a PayPal account? | Upgrade now |.

### Personal
For individuals who shop online

| Get Started |

### Premier
For individuals who buy and sell online

| Get Started |

### Business
For merchants who use a company or group name

| Get Started |

Learn about <u>low PayPal fees</u>.

Copyright © 1999-2011 PayPal. All rights reserved.

**_PayPal_**

---

Enter your information                                                      Secure 🔒

Please fill in all fields.

Email address
You will use this to log in to PayPal

Choose a password
8 characters minimum

Re-enter password

Legal first name

Legal last name

Address line 1

Address line 2 (optional)

ZIP code

City/State

Phone  Why is this needed?
Type            Country Code      Phone number
Home ▾          1 (US) ▾

Add another phone number

By clicking the button below, I agree to the PayPal User Agreement and Privacy Policy.

Agree and Create Account

Contact Us

Copyright © 1999-2011 PayPal. All rights reserved.

Exhibit B
22

# EXHIBIT C

**PayPal**

Home >

### How PayPal Works

>> View all legal agreements
## Privacy Policy
Last Update: Jul 13, 2010

Print

TRUSTe
TO VERIFY    PayPal is a TRUSTe licensee. If after contacting PayPal our response to your privacy concern is unsatisfactory, then you may contact TRUSTe by completing the form located at: http://www.truste.org/consumers/watchdog_complaint.php. TRUSTe will serve as a liaison to PayPal to resolve your concerns regarding our privacy practices. Please note that TRUSTe will not intervene for any other type of issue with your account.

**Jump to section:**

- Binding Corporate Rules
- How we collect information about you
- How we use cookies
- How we protect and store personal information
- How we use the personal information we collect
- Marketing
- How we share personal information with other PayPal users
- How we share personal information with other parties
- How you can restrict PayPal from sharing your personal information
- How you can access or change your personal information
- How you can contact us about privacy questions

This policy describes the ways we collect, store, use and protect your personal information. You accept this policy when you sign up for or use our products, services or any other features, technologies or functionalities offered by us on our website or through any other means (collectively the "PayPal Services"). We may amend this policy at any time by posting a revised version on our website. The revised version will be effective at the time we post it. In addition, if the revised version includes a substantial change, we will provide you with 30 days' prior notice by posting notice of the change on the "Policy Updates" page of our website.

### Binding Corporate Rules

In addition to the privacy practices set out in this Privacy Policy, eBay Inc. has established a set of Corporate Rules (also referred to as Binding Corporate Rules), approved by a number of European Union privacy regulators. These Corporate Rules are a commitment by eBay Inc. to adequately protect your personal information regardless of where the data resides, and depending upon your location, may provide additional privacy rights through your privacy regulator or a court. If you would like additional information regarding the Corporate Rules contact us via the contact details below.

Back to top
### How we collect information about you

When you visit the PayPal website or use the PayPal Services, we collect your IP address and standard web log information, such as your browser type and the pages you accessed on our website.

If you open an account or use the PayPal Services, we may collect the following types of information:

- Contact information - your name, address, phone, email, Skype ID and other similar information.
- Financial information - the full bank account numbers and/or credit card numbers that you link to your PayPal account or give us when you use the PayPal Services.

Before permitting you to use the PayPal Services, we may require you to provide additional information we can use to verify your identity or address or manage risk, such as your date of birth, social security number or other information. We may also obtain information about you from third parties such as credit bureaus and identity verification services.

When you are using the PayPal Services, we collect information about your transactions and your other activities on our website or using the PayPal Services and we may collect information about your computer or other access device for fraud prevention purposes.

Finally, we may collect additional information from or about you in other ways such as contacts with our customer support team or results

Exhibit C
23

when you respond to a survey from interactions with members of the eBay Inc. corporate family, and from other companies.

Back to top
## How we use cookies

When you access our website, we, or companies we hire to track how our website is used, may place small data files called "cookies" on your computer. We and our service providers also use cookies to customize the PayPal Services, content and advertising; measure promotional effectiveness, and promote trust and safety.

We send a "session cookie" to your computer when you log in to your account or otherwise use the PayPal Services. This type of cookie helps us to recognize you if you visit multiple pages on our site during the same session, so that we don't need to ask you for your password on each page. Once you log out or close your browser, this cookie expires and no longer has any effect.
We also use longer-lasting cookies for other purposes such as to display your e-mail address on our sign-in form, so that you don't need to retype the e-mail address each time you log in to your account.

We encode our cookies so that only we can interpret the information stored in them. You are free to decline our cookies if your browser permits, but doing so may interfere with your use of our website. We may also collect information about your computer or other access device to mitigate risk and for fraud prevention purposes.

You may encounter cookies from third parties when using the PayPal Services on websites that we do not control (for example, if you view a web page created by a third party or use an application developed by a third party, there may be a cookie placed by that web page or application.)

Back to top
## How we protect and store personal information

Throughout this policy, we use the term "personal information" to describe information that can be associated with a specific person and can be used to identify that person. We do not consider personal information to include information that has been anonymized so that it does not identify a specific user.

We store and process your personal information on our computers in the US and elsewhere in the world where PayPal facilities are located, and we protect it by maintaining physical, electronic and procedural safeguards in compliance with applicable US federal and state regulations. We use computer safeguards such as firewalls and data encryption, we enforce physical access controls to our buildings and files, and we authorize access to personal information only for those employees who require it to fulfill their job responsibilities.

Back to top
## How we use the personal information we collect

Our primary purpose in collecting personal information is to provide you with a secure, smooth, efficient, and customized experience. We may use your personal information to:

- provide the PayPal Services and customer support you request;
- process transactions and send notices about your transactions
- resolve disputes, collect fees, and troubleshoot problems;
- prevent potentially prohibited or illegal activities, and enforce our User Agreement;
- customize, measure, and improve the PayPal Services and the content and layout of our website and applications;
- deliver targeted marketing, service update notices, and promotional offers based on your communication preferences;
- compare information for accuracy and verify it with third parties.

Back to top
## Marketing

We don't sell or rent your personal information to third parties for their marketing purposes without your explicit consent. We may combine your information with information we collect from other companies and use it to improve and personalize the PayPal Services, content and advertising. If you don't wish to receive marketing communications from us or participate in our ad-customization programs, simply indicate your preference by logging into your account and going to the Profile subtab under the My Account tab and adjusting your preferences under Account Information, or by following the directions provided with the communication or advertisement.

Back to top
## How we share personal information with other PayPal users

To process your payments, we may share some of your personal information with the person or company that you are paying or that is paying you. Your contact information, date of sign-up, the number of payments you have received from verified PayPal users, and whether you have verified control of a bank account are provided to other PayPal users who you transact with through PayPal. In addition, this and other information may also be shared with third parties when you use these third parties to access the PayPal Services. Unless you have agreed to it, these third parties are not allowed to use this information for any purpose other than to enable the PayPal Services.

If you are buying goods or services and pay through PayPal, we may also provide the seller with your confirmed credit card billing address to help complete your transaction with the seller. The seller is not allowed to use this information to market their services to you unless you have agreed to it. If an attempt to pay your seller fails, or is later invalidated, we may also provide your seller with details of the unsuccessful

Exhibit C
24

payment. To facilitate dispute resolutions, we may provide a buyer with the seller's address so that goods can be returned to the seller.

We work with third parties, including merchants, to enable them to accept or facilitate payments from or to you using PayPal. In doing so, a third party may share information about you with us, such as your email address or mobile phone number to inform you that a payment is sent to you or when you attempt to pay that merchant or through that third party. We use this information to confirm to that you are a PayPal customer and that PayPal as a form of payment can be enabled, or where a payment is sent to you to send you notification that you have received a payment. Also, if you request that we validate your status as a PayPal customer with a third party, we will do so. Please note that merchants you buy from and contract with have their own privacy policies, and PayPal may not be held responsible for their operations, including, but not limited to, their information practices.

Regardless, we will not disclose your credit card number or bank account number to anyone you have paid or who has paid you through PayPal or with the third parties that offer or use the PayPal Services, except with your express permission or if we are required to do so to comply with a credit card rules, subpoena or other legal process.

Back to top
## How we share personal information with other parties

We may share your personal information with:

- Members of the eBay Inc. corporate family -- like eBay, Shopping.com or Bill Me Later, Inc.-- to provide joint content, products and services (like registration, transactions and customer support), to help detect and prevent potentially illegal acts and violations of our policies, and to guide decisions about their products, services and communications. Members of our corporate family will use this information to send you marketing communications only if you have requested their services.
- Service providers under contract who help with parts of our business operations such as fraud prevention, bill collection, marketing, and technology services. Our contracts dictate that these service providers only use your information in connection with the services they perform for us and not for their own benefit.
- Financial institutions that we partner with to jointly create and offer a product such as the PayPal Plus credit card where we share information with GE Money Bank to determine whether you should receive pre-approved offers for the PayPal Plus credit card. These financial institutions may only use this information to market PayPal-related products, unless you have given consent for other uses.
- Credit bureaus to report account information, as permitted by law.
- Banking partners as required by credit card association rules for inclusion on their list of terminated merchants (in the event that you meet their criteria which includes having PayPal close your PayPal Account due to your breach of the PayPal User Agreement).
- Companies that we plan to merge with or be acquired by. (Should such a combination occur, we will require that the new combined entity follow this privacy policy with respect to your personal information. If your personal information could be used contrary to this policy, you will receive prior notice.)
- Law enforcement, government officials, or other third parties when

  - we are compelled to do so by a subpoena, court order or similar legal procedure
  - we need to do so to comply with law or credit card rules
  - we believe in good faith that the disclosure of personal information is necessary to prevent physical harm or financial loss, to report suspected illegal activity, or to investigate violations of our User Agreement.

- Other third parties with your consent or direction to do so.

PayPal will not sell or rent any of your personal information to third parties for their marketing purposes and only shares your personal information with third parties as described in this policy.

If you open a PayPal account directly on a third party website or via a third party application, any information that you enter on that website or application (and not directly on a PayPal website) will be shared with the owner of the third party website or application and your information may be subject to their privacy policies.
.

Back to top
## How you can restrict PayPal from sharing your personal information

Federal and state laws allow you to restrict the sharing of your personal information in certain instances. However, these laws also state that you cannot restrict other types of sharing. Because we have chosen to refrain from certain types of data sharing, the only type of sharing of your personal information that you may restrict is as follows:

If you do not want PayPal to share your personal information with eBay companies for the purpose of marketing their products or with other financial institutions for the purpose of marketing our jointly offered products to you, please log in to your account and uncheck the box in the Information Sharing section of the Notifications and Information Sharing page. This page can be accessed by going to the **Profile** subtab under the **My Account** tab.

You can also control how we use your contact information to market the PayPal Services to you in the notifications preferences.

Back to top
## How you can access or change your personal information

You can review and edit your personal information at any time by logging in to your account and clicking the **Profile** subtab under the **My Account** tab.

Exhibit C
25

Back to top
## How you can contact us about privacy questions

If you have questions or concerns regarding this policy, you should contact us by using this form or writing to us at PayPal, Attn: Privacy Department, P.O. Box 45950, Omaha, NE 68145-0950. PayPal maintains offices at 2211 N. First Street, San Jose, CA.

PayPal is a TRUSTe licensee. If after contacting PayPal our response to your privacy concern is unsatisfactory, then you may contact TRUSTe by completing the form located at: http://www.truste.org/consumers/watchdog_complaint.php. TRUSTe will serve as a liaison to PayPal to resolve your concerns regarding our privacy practices. Please note that TRUSTe will not intervene for any other type of issue with your account.

Back to top

Copyright © 1999-2011 PayPal. All rights reserved.

Exhibit C
26

# EXHIBIT D

1
2
3
4
5
6
7               IN THE UNITED STATES DISTRICT COURT
8            FOR THE NORTHERN DISTRICT OF CALIFORNIA
9                       SAN JOSE DIVISION
10   Warner Brothers Records, Inc., et al.,        NO. C 07-04849 JW
11                  Plaintiffs,           **ORDER GRANTING EX PARTE**
12        v.                              **APPLICATION FOR LEAVE TO TAKE**
                                          **IMMEDIATE DISCOVERY**
13   John Doe,
14                  Defendant.
     _____/
15        Plaintiffs move *ex parte* for leave to take immediate discovery to obtain the identity of
16   Defendant Doe, an alleged copyright infringer.  Plaintiffs allege that they tracked the Internet
17   Protocol ("IP") address associated with Defendant's activity online, and that the tracking showed
18   Defendant provided copyrighted files for others to download.  The IP address associated with
19   Defendant's activity online on January 26, 2007 is: 138.202.222.153.  (See Complaint, Ex. A,
20   Docket Item No. 1.)
21        Although parties must generally confer prior to seeking expedited discovery, that
22   requirement may be dispensed if good cause is shown.  See Fed. R. Civ. P. 26(d); Semitool, Inc. v.
23   Tokyo Electron Am., Inc., 208 F.R.D. 273, 275-76 (N.D. Cal. 2002).  When the identity of a
24   defendant is not known prior to filing a complaint, the court should give the plaintiff an opportunity
25   to identify the defendant through discovery, "unless it is clear that discovery would not uncover [the
26   defendant's] identity[], or that the complaint should be dismissed on other grounds."  Gillespie v.
27   Civletti, 629 F.2d 637, 642 (9th Cir. 1980.)  Although the Family Education Rights and Privacy Act
28

*United States District Court*
For the Northern District of California

1  generally prohibits disclosure of certain records by federally-funded education institutions, it

2  provides that information can be disclosed pursuant to court order. 20 U.S.C. § 1232g(b)(2)(B).

3       Plaintiffs contend that they have evidence to make a *prima facie* case of copyright

4  infringement against Defendant, and that they have identified the Internet Service Provider ("ISP")

5  that provided Internet access to Defendant. (Plaintiffs' *Ex Parte* Application for Leave to Take

6  Immediate Discovery, Docket Item No. 4.) The ISP has subscriber activity log files that may allow

7  Plaintiffs to identify Defendant by IP address. Plaintiffs further contend that the records kept by

8  ISPs are regularly destroyed, sometimes on a daily or weekly basis. Thus, the Court finds that

9  Plaintiffs have demonstrated good cause for expedited discovery. (Id.)

10       Accordingly, the Court GRANTS Plaintiffs' *Ex Parte* Application for Leave to Take

11  Immediate Discovery. Plaintiffs shall serve immediate discovery on the University of San Francisco

12  to obtain the identity of Defendant by serving a Rule 45 subpoena that seeks documents identifying

13  Defendant, including Defendant's name, current (and permanent) address, telephone number, and

14  email address. This order is limited to the discovery of information associated with the IP address,

15  138.202.222.153 on March 26, 2007 at 17:47:51 EST.

16       The disclosure of this information is ordered consistent with the obligations of 20 U.S.C. §

17  1232g(b)(2)(B). Under that provision, the University of San Francisco shall notify students subject

18  to the subpoena and their parents "in advance of the compliance" with the subpoena. Id. If the

19  University of San Francisco and Defendant wishes to move to quash the subpoena, they shall do so

20  before the return date of the subpoena.

21       Plaintiff shall use the information disclosed in response to the Rule 45 subpoena solely in

22  connection with this case and for the purposes of protecting Plaintiffs' rights under the Copyright

23  Act.

24

25  Dated:  October 12, 2007

26                                  JAMES WARE
                                United States District Judge

27

28                           2

*United States District Court*
*For the Northern District of California*

1    THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:

2    Matthew Franklin Jaksa matt.jaksa@hro.com

3

4    Dated:  October 12, 2007                                    Richard W. Wieking, Clerk

5

6                                                                By:   /s/ JW Chambers
                                                                      Elizabeth Garcia
7                                                                     Courtroom Deputy

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

Case3:04-cv-01135-MMC   Document9   Filed04/29/04   Page1 of 2

1   JEFFREY G. KNOWLES (State Bar # 129754)
    JULIA D. GREER (State Bar # 200479)
2   ZUZANA J. SVIHRA (State Bar # 208671)
    COBLENTZ, PATCH, DUFFY & BASS, LLP
3   One Ferry Building, Suite 200
    San Francisco, California 94111
4   Telephone: (415) 391-4800
    Facsimile:  (415) 989-1663
5
    Attorneys for Plaintiffs
6   MAVERICK RECORDING CO.; WARNER BROS.
    RECORDS INC.; ARISTA RECORDS, INC.; VIRGIN
7   RECORDS AMERICA, INC.; UMG RECORDINGS, INC.;
    INTERSCOPE RECORDS; BMG MUSIC; SONY MUSIC
8   ENTERTAINMENT INC.; ATLANTIC RECORDING
    CORP.; MOTOWN RECORD COMPANY, L.P.; and
9   CAPITOL RECORDS, INC.

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

13   MAVERICK RECORDING COMPANY, a          CASE NO. C-04-1135 MMC
     California joint venture; WARNER BROS.
14   RECORDS INC., a Delaware corporation;   [PROPOSED] ORDER GRANTING
     ARISTA RECORDS, INC., a Delaware        PLAINTIFFS' MISCELLANEOUS
15   corporation; VIRGIN RECORDS AMERICA,    ADMINISTRATIVE REQUEST FOR
     INC., a California corporation; UMG     LEAVE TO TAKE IMMEDIATE
16   RECORDINGS, INC., a Delaware            DISCOVERY
     corporation; INTERSCOPE RECORDS, a
17   California general partnership; BMG MUSIC,
     a New York general partnership; SONY
18   MUSIC ENTERTAINMENT INC., a
     Delaware corporation; ATLANTIC
19   RECORDING CORPORATION, a Delaware
     corporation; MOTOWN RECORD
20   COMPANY, L.P., a California limited
     partnership; and CAPITOL RECORDS, INC.,
21   a Delaware corporation,

22                    Plaintiffs,

23          vs.

24   DOES 1 - 4,

25                    Defendants.

26

27

28

                                            [PROPOSED] ORDER

Case3:04-cv-01135-MMC    Document9    Filed04/29/04    Page2 of 2

1          Upon the Miscellaneous Administrative Request of Plaintiffs For Leave To Take

2    Immediate Discovery, the Declaration of Jonathan Whitehead and the exhibit thereto, Plaintiffs'

3    Request for Judicial Notice, and the Declaration of Zuzana J. Svihra, it is hereby:

4          ORDERED that Plaintiffs may serve immediate discovery on the University of

5    California, Berkeley to obtain the identity of each Doe Defendant by serving a Rule 45 subpoena

6    that seeks information sufficient to identify each Doe Defendant, including the name, address,

7    telephone number, e-mail address, and Media Access Control addresses for each Defendant.

8          IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in

9    response to the Rule 45 subpoena may be used by Plaintiffs solely for the purpose of protecting

10    Plaintiffs' rights under the Copyright Act.

11          Without such discovery, Plaintiffs cannot identify the Doe Defendants, and thus

12    cannot pursue their lawsuit to protect their copyrighted works from infringement.

13

14    Dated:____April 28, 2004____        James Larson U.S. Magistrate Judge

15                          ~~United States District Judge~~

16

17

18

19

20

21

22

23

24

25

26

27

28

COBLENTZ, PATCH, DUFFY & BASS, LLP
One Ferry Building, Suite 200, san francisco, ca 94111-4213
(415) 391-4800  •  (415) 989-1663

2
[PROPOSED] ORDER

Case No. C-04-1135 MMC



ARISTA RECORDS LLC, a Delaware limited liability company; ATLANTIC RE-CORDING CORPORATION, a Delaware corporation; BMG MUSIC, a New York general partnership; CAPITOL RECORDS, INC., a Delaware corporation; ELEK-TRA ENTERTAINMENT GROUP INC., a Delaware corporation; INTERSCOPE RECORDS, a California general partnership; LAFACE RECORDS LLC, a Dela-ware limited liability company; MAVERICK RECORDING COMPANY, a Califor-nia joint venture; MOTOWN RECORD COMPANY, L.P., a California limited partnership; PRIORITY RECORDS LLC, a California limited liability company; SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership; UMG RECORDINGS, INC., a Delaware corporation; VIRGIN RECORDS AMERICA, INC., a California corporation; and WARNER BROS. RECORDS INC., a Delaware corporation, Plaintiffs, v. DOES 1-16, Defendants.

CASE NO. 07-1641 LKK EFB

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA

2007 U.S. Dist. LEXIS 97685

August 23, 2007, Decided
August 23, 2007, Filed

**COUNSEL:** [*1] For Arista Records LLC, Atlantic Recording Corporation, BMG Music, Capitol Records, Inc., Elektra Entertainment Group Inc., Interscope Records, La Face Records, Maverick Recording Company, Motown Record Company, L.P., Priority Records LLC, Sony BMG Music Entertainment, UMG Recordings, Inc., Virgin Records America, Inc., Virgin Records America, Inc., Warner Bros. Records, Inc., Plaintiffs: Matthew Franklin Jaksa, Holme Roberts and Owen LLP (San Francisco), San Francisco, CA.

**JUDGES:** EDMUND F. BRENNAN, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** EDMUND F. BRENNAN

**OPINION**

**ORDER GRANTING EX PARTE APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY**

Upon the Plaintiffs' *Ex Parte* Application for Leave to Take Immediate Discovery, the Declaration of Carlos Linares, and the accompanying Memorandum of Law, it is hereby ORDERED that Plaintiffs may serve immedi-ate discovery on University of California, Davis to obtain the identity of each Doe Defendant by serving a Rule 45 subpoena that seeks documents that identify each Doe Defendant, including the name, current (and permanent) addresses and telephone numbers, e-mail addresses, and Media Access Control addresses for each Defendant.

Although parties must generally meet and confer [*2] prior to seeking expedited discovery, that require-ment may be dispensed if good cause is shown. *See* Fed. R. Civ. P. 26(d); *Semitool, Inc. v. Tokyo Electron Am., Inc.,* 208 F.R.D. 273, 275-76 (N.D. Cal. 2002). Here, the plaintiffs have presented evidence that the subpoena is necessary to identify the defendants, serve them with the complaint and summons, and prosecute their claims of copyright infringement. *See Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980) ("where the identity of alleged defendants will not be known prior to the filing of a complaint . . . . the plaintiff should be given an op-portunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds."). Plaintiffs have further averred that records kept by internet service providers ("ISP") such as the University of California, Davis, are regularly destroyed, sometimes on a daily or weekly ba-

2007 U.S. Dist. LEXIS 97685, *

sis. *See* Linares Declaration, at P 24. Based on the foregoing, the court finds that plaintiffs have demonstrated good cause for the expedited discovery.

The disclosure of this information is ordered pursuant [*3] to 20 U.S.C. § 1232g(b)(2)(B). Consistent with that provision, if and when the University of California, Davis is served with a subpoena, it shall, within five business days, give written notice to the subscribers whose identities are to be disclosed in response to the subpoena. Such written notice may be achieved by messages sent via electronic mail. If the University of California, Davis, and/or any defendant wishes to move to

quash the subpoena, they shall do so before the return date of the subpoena.

IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in response to the Rule 45 subpoena may be used by Plaintiffs solely for the purpose of protecting Plaintiffs' rights under the Copyright Act.

Dated: August 23, 2007.

/s/ Edmund F. Brennan

EDMUND F. BRENNAN

UNITED STATES MAGISTRATE JUDGE

FILED

2007 APR 23   PM 1:19

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership; UMG RECORDINGS, INC., a Delaware corporation; ARISTA RECORDS LLC, a Delaware limited liability company; CAPITOL RECORDS, INC., a Delaware corporation; WARNER BROS. RECORDS INC., a Delaware corporation; INTERSCOPE RECORDS, a California general partnership; PRIORITY RECORDS LLC, a California limited liability company; ATLANTIC RECORDING CORPORATION, a Delaware corporation; FONOVISA, INC., a California corporation; MAVERICK RECORDING COMPANY, a California joint venture; MOTOWN RECORD COMPANY, L.P., a California limited partnership; ELEKTRA ENTERTAINMENT GROUP INC., a Delaware corporation; BMG MUSIC, a New York general partnership; VIRGIN RECORDS AMERICA, INC., a California corporation; and LAFACE RECORDS LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br>    v.<br>DOES 1 - 16,<br><br>    Defendants. | C '07 CV  0581 BTM    AJB<br><br>[PROPOSED] ORDER GRANTING PLAINTIFFS' *EX PARTE* APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY |

1

1       Upon the Plaintiffs' *Ex Parte* Application for Leave to Take Immediate Discovery, the

2 Declaration of Carlos Linares, and the accompanying Memorandum of Law, it is hereby:

3       ORDERED that Plaintiffs may serve immediate discovery on SBC Internet Services, Inc. to

4 obtain the identity of each Doe Defendant by serving a Rule 45 subpoena that seeks documents that

5 identify each Doe Defendant, including the name, current (and permanent) addresses and telephone

6 numbers, e-mail addresses, and Media Access Control addresses for each Defendant. The disclosure

7 of this information is ordered pursuant to 47 U.S.C. § 551(c)(2)(B).

8       IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in response to the

9 Rule 45 subpoena may be used by Plaintiffs solely for the purpose of protecting Plaintiffs' rights under

10 the Copyright Act.

11

12 DATED: 4-19-07             By: _____
                                         United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1    04-CV-00960-IFP

2

3

4

5

6

7            UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON

8

9   UMG RECORDINGS, INC., a Delaware    No. C04- 0960(c)-L
    corporation; ATLANTIC RECORDING

10  CORPORATION, a Delaware corporation;  [PROPOSED] ORDER GRANTING
    WARNER BROS. RECORDS INC., a    PLAINTIFFS' MOTION FOR LEAVE TO

11  Delaware corporation; SONY MUSIC   TAKE IMMEDIATE DISCOVERY
    ENTERTAINMENT INC., a Delaware

12  corporation; BMG MUSIC, a New York
    general partnership; and VIRGIN

13  RECORDS AMERICA, INC., a California
    corporation,

14
            Plaintiffs,

15
        v.

16
    DOES 1 - 2,

17
           Defendants.

18

19     Upon the Motion of Plaintiffs for Leave to Take Immediate Discovery and the

20 supporting Memorandum of Law, and the declaration of Jonathan Whitehead and the

21 exhibit thereto, it is hereby:

22     ORDERED that Plaintiffs may serve immediate discovery on Microsoft Corporation

23 to obtain the identity of each Doe Defendant by serving a Rule 45 subpoena that seeks

24 information sufficient to identify each Doe Defendant, including the name, address,

25 telephone number, e-mail address, and Media Access Control addresses for each Defendant.

26

[PROPOSED] ORDER GRANTING
PLAINTIFFS' MOTION FOR LEAVE TO
TAKE IMMEDIATE DISCOVERY
Page 1

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE, WA 98104
T 206 516 3800  F 206 516 3888

1    IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in

2   response to the Rule 45 subpoena may be used by Plaintiffs solely for the purpose of

3   protecting Plaintiffs' rights under the Copyright Act.

4

5   Dated: __May 14, 2009__          _____

6                                    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

[PROPOSED] ORDER GRANTING
PLAINTIFFS' MOTION FOR LEAVE TO
TAKE IMMEDIATE DISCOVERY
Page 2

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE, WA 98104
T 206 516 3800  F 206 516 3888

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAY 1 0 2004

JAMES R. LARSEN, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

LOUD RECORDS, LLC, a
Delaware corporation; WARNER
BROS. RECORDS INC., a
Delaware corporation; ATLANTIC
RECORDING CORPORATION, a
Delaware corporation; VIRGIN
RECORDS AMERICA, INC., a
California corporation; PRIORITY
RECORDS LLC, a California
limited liability company;
ELEKTRA ENTERTAINMENT
GROUP INC., a Delaware
corporation; BMG RECORDINGS,
INC, a Delaware corporation;
ARISTA RECORDS, INC., a
Delaware corporation; BMG
MUSIC, a New York general
partnership; SONY MUSIC
ENTERTAINMENT INC., a
Delaware corporation; MAVERICK
RECORDING COMPANY, a
California joint venture; and
CAPITOL RECORDS, INC., a
Delaware corporation,

        Plaintiffs,

    v.

DOES 1-5,

        Defendants.

NO. CV-04-0134-RHW

**ORDER GRANTING PLAINTIFFS'
MOTION FOR LEAVE TO TAKE
IMMEDIATE DISCOVERY**

Before the Court is Plaintiffs' Motion for Leave to Take Immediate

Discovery (Ct. Rec. 7). The Plaintiffs, members of the Recording Industry

Association of America, Inc. ("RIAA"), have filed a complaint alleging that DOES

ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO TAKE
IMMEDIATE DISCOVERY * 1

1  1-5 illegally engaged in uploading and downloading copyrighted recordings
2  through www.KaZaA.com, a peer to peer ("P2P") internet service (Ct. Rec. 1).
3  While Plaintiffs are unable to identify the Does, they collected records of
4  Defendants' Internet Protocol ("IP") address, the times the downloads or uploads
5  took place, and information regarding the specific recordings that were
6  downloaded or uploaded.  The Plaintiffs were able to ascertain from Defendants'
7  IP addresses that they were utilizing Gonzaga University as their Internet Service
8  Provider ("ISP").  Plaintiffs seek statutory damages under 17 U.S.C. § 504(c),
9  attorneys fees and costs pursuant to 17 U.S.C. § 505, and injunctive relief under
10  17 U.S.C. §§ 502 and 503.
11      In their Motion for Leave to Take Immediate Discovery, the Plaintiffs seek
12  leave to serve Gonzaga University, the ISP for Does 1-5, with a Rule 45 Subpoena
13  Duces Tecum, requiring Gonzaga University to reveal the Defendant's names,
14  addresses, email addresses, telephone number, and Media Access Control
15  ("MAC") addresses.
16      The Ninth Circuit has held that "where the identity of alleged defendants
17  will not be known prior to the filing of a complaint . . . . the plaintiff should be
18  given an opportunity through discovery to identify the unknown defendants,
19  unless it is clear that discovery would not uncover the identities, or that the
20  complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d
21  637, 642 (9th Cir. 1980).  Presumably, the discovery device anticipated by this
22  ruling was Rule 45, under which a party may compel a nonparty to produce
23  documents or other materials that could reveal the identities. *See Pennwalt Corp.*
24  *v. Durand-Wayland, Inc.*, 708 F.2d 492 (9th Cir. 1983).  The Court finds that this
25  instance presents the very situation indicated by *Gillespie*.  The Plaintiffs' case
26  relies on the disclosure of the Does' identities, and those identities are likely
27  discoverable from a third party.
28      Under Rule 26(d), Rule 45 subpoenas should not be served prior to a Rule

ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO TAKE
IMMEDIATE DISCOVERY * 2

1  26(f) conference unless the parties can show good cause.  Fed. R. Civ. P. 26(d) ("a

2  party may not seek discovery from any source before the parties have conferred as

3  required by Rule 26(f) . . . . [u]nless the court upon motion . . . . orders

4  otherwise"); *see Semitool, Inc. V. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-

5  76 (N.D. Cal. 2002).  The Plaintiffs have presented compelling evidence that the

6  records kept by ISP providers of IP addresses are regularly destroyed.  Thus, good

7  cause has been shown.

8         Accordingly, **IT IS ORDERED** that:

9         1.     Plaintiffs' Motion for Leave to Take Immediate Discovery (Ct. Rec.

10  7) is **GRANTED.**

11         2.     Plaintiffs are **GIVEN LEAVE** to serve immediate discovery on

12  Gonzaga University to obtain the identity of each Doe Defendant by serving a

13  Rule 45 subpoena duces tecum that seeks each Doe Defendants' name, address,

14  telephone number, email address, and Media Access Control address.  As agreed

15  by Plaintiffs, this information disclosed will be used solely for the purpose of

16  protecting their rights under the copyright laws.

17         3.     Plaintiffs are **ORDERED** to review Local Rule 7.1(g)(2) regarding the

18  citation of unpublished decisions.  All unpublished decisions cited to the Court

19  have been disregarded.

20         **IT IS SO ORDERED.** The District Court Executive is hereby directed to

21  enter this order and to furnish copies to counsel of record.

22         **DATED** this _10_ day of May, 2004.

23

24

25                        ROBERT H. WHALEY
                          United States District Judge
26

27  Q:\Civil\2004\Loud Records\Loud.immediatediscovery.order.wpd

28

ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO TAKE
IMMEDIATE DISCOVERY * 3



Case 2:04-cv-01962-DSF-AJW   Document 11    Filed 04/02/2004   Page 1 of 2  *SCAN only*

DOCKETED ON CM

APR - 5 2004

BY _____ 058

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

CIVIL MINUTES - GENERAL

Case No. CV 04-1962 ABC (AJWx)                          Date:  April 2, 2004

Title: <u>LONDON-SIRE RECORDS, INC., et. al., v. DOES 1-4</u>

========================================================

PRESENT:  HON. ANDREW J. WISTRICH, MAGISTRATE JUDGE

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED
BY FAX DELIVERY ON PLAINTIFF/DEFENDANT OR COUNSEL
AT THEIR RESPECTIVE MOST RECENT FAX NUMBER OF RECORD
IN THIS ACTION ON THIS DATE.

DATE: 4-2-04

DEPUTY CLERK

         Ysela Benavides
         Deputy Clerk                                     Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:          ATTORNEYS PRESENT FOR DEFENDANTS:
         None Present                                     None Present

ORDER REGARDING PLAINTIFFS' EX PARTE APPLICATION FOR LEAVE TO
TAKE IMMEDIATE DISCOVERY

Plaintiffs are thirteen record companies who have filed a lawsuit against four unnamed
"doe" defendants for alleged copyright infringement.  Plaintiffs filed a motion for leave to
take immediate discovery on March 23, 2004.  [Notice of Ex Parte Application for Leave
to Take Immediate Discovery ("Notice") filed March 23, 2004].  Plaintiffs allege that
defendants, using an online peer-to-peer ("P2P") media distribution system, made available
for distribution, and in fact distributed, copyrighted songs without license or other
authority to do so, thereby infringing plaintiffs' copyrights. [See Memorandum of Law in
Support of Ex Parte Application For Leave to Take Immediate Discovery ("Memorandum")
filed March 23, 2004, at 2].  Plaintiffs have acquired the Internet Protocol ("IP") addresses
assigned to each of the four defendants on the dates and times of the infringing activity.
[Memorandum 2].  Using a public database, plaintiffs determined that the subject IP
addresses belong to the University of Southern California ("USC"). [Memorandum 2-3].
As an Internet Service Provider ("ISP"), USC maintains a subscriber activity log indicating
which of its subscribers were assigned the IP addresses in question  on the relevant dates
and times. [Memorandum 3].  In plaintiffs' experience, most ISPs maintain subscriber
activity logs for only a short period of time before destroying the information contained in
the logs. [Memorandum 3].  From the subscriber logs, USC can use the IP addresses and
temporal information provided by plaintiffs to identify the true names, street addresses,
phone numbers, e-mail addresses, and Media Access Control ("MAC") addresses for each
defendant. [Memorandum 3].  Plaintiffs ask this Court to allow immediate issuance of a
subpoena directing USC to produce defendants' names and the other personal information
described above so that plaintiffs may contact defendants in an attempt to negotiate a
resolution to plaintiffs' claims, or failing that, to add defendants as named parties to this
litigation.

CIVIL MINUTES - GENERAL                                   Page 1 of 2

Exhibit D
41

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES--GENERAL

Generally, parties must meet and confer prior to seeking expedited discovery.  See Fed. R. Civ. P. 26(f).  That requirement, however, may be dispensed with if good cause is shown. See Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 275-76 (N.D. Cal. 2002). Plaintiffs have shown good cause.  The true identities of defendants are unknown to plaintiffs, and this litigation cannot proceed without discovery of defendants' true identities. [See Memorandum 7-9].

Subject to the following qualifications, plaintiffs' ex parte application for leave to take immediate discovery is **granted.**

If USC wishes to file a motion to quash the subpoena or to serve objections, it must do so before the return date of the subpoena, which shall be no less than twenty-one (21) days from the date of service of the subpoena.  Among other things, USC may use this time to notify the subscribers in question.

USC shall preserve any subpoenaed information or materials pending compliance with the subpoena or resolution of any timely objection or motion to quash.

Plaintiffs must serve a copy of this order on USC when they serve the subpoena.

Any information disclosed to plaintiffs in response to the Rule 45 subpoena must be used by plaintiffs solely for the purpose of protecting plaintiffs' rights under the Copyright Act as set forth in the complaint.


**IT IS SO ORDERED.**


cc:    Parties